NO. 12-03-00324-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
EDDIE KEVIN COLEMAN,                             §                 APPEAL FROM THE EIGHTH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 HOPKINS COUNTY, TEXAS
                                                                                                                                                            
OPINION
            Appellant Eddie Kevin Coleman was convicted of unlawful possession of a firearm by a
felon and sentenced to imprisonment for life. He raises nine issues on appeal. We affirm.
 
BACKGROUND
            Appellant was indicted for unlawful possession of a firearm by a felon, a third degree felony. 
See Tex. Pen. Code Ann. § 46.04(a)(1), (e) (Vernon Supp. 2004-05). The indictment included three
enhancement paragraphs in which the State alleged Appellant previously had been convicted of
thirteen felonies. Appellant pleaded “not guilty,” and the case proceeded to a jury trial. 
            At trial, Officer Cleve “Buddy” Williams, a sergeant with the Sulphur Springs Police
Department, testified that he stopped Appellant for a traffic violation. During the stop, Williams
became suspicious that Appellant was engaged in criminal activity. After issuing Appellant a
warning citation for the traffic violation, Williams requested permission to search Appellant’s
vehicle. When he was unable to get a “yes or no” answer to his question, Williams retrieved his
canine from the patrol car and conducted a “free air search” around the vehicle. The canine alerted
for the presence of narcotics. Williams searched the passenger compartment of the vehicle, but was
unable to gain access to the trunk. 
            Ultimately, the vehicle was driven to the Hopkins County Sheriff’s Office where the trunk
was opened and searched. Among the items found in the trunk were two rifles, a shotgun, 2.06
grams of cocaine in its base form, and various items commonly associated with narcotics or crack
cocaine trafficking. Appellant urged a motion to suppress all items found during the search. The
trial court denied the motion and admitted the evidence. The jury found Appellant guilty as charged
in the indictment, found the enhancement paragraphs “true,” and assessed Appellant’s punishment
at imprisonment for life. This appeal followed.
 
Motion to Suppress
            In his first three issues, Appellant contends that the trial court erred when it denied his motion
to suppress. Specifically, Appellant contended in his motion, and argues on appeal, that (1) the
traffic stop was illegal, (2) the traffic stop exceeded its constitutional scope and duration, and (3) the
officer’s detention of Appellant for a canine search was not supported by reasonable suspicion. 
Standard of Review
            A trial court’s decision on a motion to suppress is reviewed under an abuse of discretion
standard. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). An appellate court should
give almost total deference to a trial court’s determination of historical facts supported by the record,
especially when the trial court’s fact findings are based on an evaluation of credibility and demeanor. 
Id. Generally, we consider de novo issues that are purely questions of law, such as reasonable
suspicion and probable cause. Id. 
            In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of
the witnesses and the weight to be given their testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000). Accordingly, the judge may believe or disbelieve all or any part of a witness’s
testimony, even if that testimony is not controverted. Id. In the case at bar, the trial court did not
make explicit findings of historical fact. Therefore, we assume the trial court made the implicit
findings supported by the record that buttress its conclusions. See Carmouche v. State, 10 S.W.3d
323, 327-28 (Tex. Crim. App. 2000).
Legality of Stop
            A law enforcement officer may lawfully stop a motorist who commits a traffic violation. 
Garcia v. State, 827 S.W.2d 937, 944 (Tex. 1992). In general, the decision to stop an automobile is
reasonable when an officer has probable cause to believe that a traffic violation has occurred. Walter
v. State, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000); see also Whren v. United States, 517 U.S. 806,
810, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996). Violation of a traffic law in an officer’s
presence is sufficient authority for an initial stop. Armitage v. State, 637 S.W.2d 936, 939 (Tex.
Crim. App. 1982).
            The trial court took up Appellant’s motion to suppress during Officer Williams’s trial
testimony. According to Williams, at approximately noon on October 7, 2002, he stopped Appellant
on Interstate 30 for failing to signal a lane change for one hundred feet. Williams testified that “when
[Appellant] made his lane change, that his blinker–that he did give a blinker, but he didn’t actually
activate until he was already across the center stripe.” Williams “did not see the turn signal start
working until after [Appellant] was already across the center stripe, a little bit across the center
stripe.” 
             Appellant correctly points out that Texas law does not include a requirement that a driver
signal a lane change for one hundred feet. However, a driver must signal an intention to make a lane
change. See Tex. Transp. Code Ann. § 545.104(a) (Vernon 1999) (requires vehicle operator to
signal an intention to turn, change lanes, or start from a parked position). The stop was not unlawful
merely because Williams incorrectly stated the law that justified the stop. See Williams v. State, 726
S.W.2d 99, 100-01 (Tex. Crim. App. 1986) (case will not be reversed where officers give wrong
reason for why their actions were legal under Fourth Amendment if facts support a correct reason). 
            Appellant argues that because his turn signal was lighted before he crossed the stripe, he did
not violate any traffic law. The purpose of signaling an intention to make a lane change is to alert
other drivers to the intended movement. See Lee v. State, No. 05-02-00880-CR, 2003 WL 194733,
at *2 (Tex. App.–Dallas 2003, pet. ref’d) (not designated for publication) (purpose of turn signal is
to alert other drivers that vehicle is about to turn). We decline to hold that a lighted turn signal which
does not blink prior to the lane change satisfies the statutory mandate to signal an intention to turn. 
See Tex. Transp. Code Ann. § 545.104(a). 
            Appellant next points out that Williams admitted Appellant did not place anyone in danger
by failing to signal before the lane change. Texas law prohibits a driver from turning a vehicle from
a direct course or moving to the right or left on a roadway unless the movement can be made safely. 
See id. § 545.103 (Vernon 1999). However, we have found no authority suggesting that a signal is
unnecessary where the lane change can be made safely. See Krug v. State, 86 S.W.3d 764, 767 (Tex.
App.–El Paso 2002, pet. ref’d) (driver has duty to signal intention to turn and must also make turn
safely; sections 545.103 and 545.104 are not mutually exclusive). Moreover, we must presume that
the entire statute is intended to be effective. See Tex. Gov’t Code Ann. § 311.021(2) (Vernon
2005). Because only those lane changes that can be made safely are permitted, any construction
limiting the signal requirement to unsafe lane changes renders the pertinent portion of section
545.104(a) a nullity. We cannot adopt such a construction. See Tex. Gov’t Code Ann.
§ 311.021(2).
             Finally, Appellant contends that the traffic stop was pretextual. It is well established that an
officer’s subjective intent is relevant only to a credibility assessment of his stated reasons for
stopping or arresting an individual. Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). 
Where, as here, the facts and circumstances show that the traffic stop was lawful, the subjective
reasons for such detention are irrelevant. See Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App.
2001).
            Williams observed Appellant change lanes without signaling his intent to do so. The failure
to signal an intention to change lanes is a traffic violation. Therefore, Williams had probable cause
to initiate a traffic stop. Consequently, the trial court did not abuse its discretion by concluding that
the traffic stop was legal. Appellant’s first issue is overruled.
Duration and Scope of Stop
            A routine traffic stop resembles an investigative detention. State v. Cardenas, 36 S.W.3d 243,
246 (Tex. App.–Houston [1st Dist.] 2001, pet. ref’d) (citations omitted). An investigative detention
is a seizure. Francis v. State, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). Therefore, a traffic stop
must be reasonable. See U.S. Const. amend. IV. To determine the reasonableness of an investigative
detention, we apply the Terry


 test: (1) whether the officer’s action was justified at its inception and
(2) whether it was reasonably related in scope to the circumstances that justified the initial
interference. Cardenas, 36 S.W.3d at 246 (citing Terry, 392 U.S. at 19-20, 88 S. Ct. at 1879; Davis
v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)). An investigative detention must last no
longer than is necessary to carry out the purpose of the stop. Florida v. Royer, 460 U.S. 491, 500,
103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983); Davis, 947 S.W.2d at 243. Once the reason for the
initial detention has been satisfied, the detention cannot be used as a “fishing expedition for unrelated
criminal activity.” See Davis, 947 S.W.2d at 243 (quoting Ohio v. Robinette, 519 U.S. 33, 41, 117
S. Ct. 417, 422, 136 L. Ed. 2d 347 (1996) (Ginsberg, J., concurring)). If during the course of a valid
investigative detention, the officer develops a reasonable suspicion that the detainee was engaged in
or soon would engage in criminal activity, a continued detention is justified. See State v. Gray, 157
S.W.3d 1, 5 (Tex. App.–Tyler 2004), aff’d, 158 S.W.3d 465 (Tex. Crim. App. 2005). The officer
must have specific articulable facts, which, premised upon his experience and personal knowledge,
when coupled with the logical inferences from those facts, would warrant the intrusion on the
detainee. Davis, 947 S.W.2d at 244 (quoting Garza v. State, 771 S.W.2d 549, 558 (Tex. Crim. App.
1989) (citations omitted)). These facts must amount to more than a mere hunch or suspicion. Davis,
947 S.W.2d at 244 (quoting Garza, 771 S.W.2d at 558). Although reasonable suspicion must be
based on articulable facts rather than an unparticularized hunch, the level of suspicion required for
a detention is obviously less demanding than that for probable cause. United States v. Sokolow, 490
U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989). Probable cause requires only “a fair
probability that contraband or evidence of a crime will be found.” Id. That level of suspicion is
considerably less than proof of wrongdoing by a preponderance of the evidence. Id. 
            Reasonable suspicion is determined based on the totality of the circumstances. Woods v.
State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Where there has been some cooperation between
officers, the cumulative knowledge of the cooperative officers at the time of the stop is to be
considered in determining whether reasonable suspicion exists. Hoag v. State, 728 S.W.2d 375, 380
(Tex. Crim. App. 1987).
            In the instant case, Williams had been with the Sulphur Springs Police Department (the
“Department”) for nine years, had been a sergeant for three years prior to the traffic stop, and was a
certified peace officer. He also had been a Hopkins County sheriff’s deputy for four years before his
employment with the Department. Williams was in charge of the Department’s K-9 program and its
criminal interdiction program. The officers in the criminal interdiction program “work Interstate 30
traffic enforcement.” Williams defined “interdiction” as “mak[ing] contact through the traffic
enforcement” and explained that the interdiction officers “have other training that allows [them] to
know when there may be something more than just a traffic stop taking place.” 
            Williams testified that at approximately 11:00 a.m. on October 7, 2002, he received a call
from Rockwall County Deputy Bobby Burks. Williams stated that Burks gave him a description of
a vehicle he had just stopped, which was driven by Appellant. Burks told Williams that Appellant
had several prior arrests for narcotics offenses. He also told Williams that Appellant consented to a
search of his vehicle and that during the search, Burks found a green satchel in the front of the vehicle
that contained several “little jeweler bags.” Williams testified that, in his experience, these bags were
consistent with crack cocaine trafficking. Burks told Williams that when he moved to the trunk of
the vehicle, Appellant withdrew his consent to the search. Because Burks did not have access to a
narcotics canine, he “ended up letting the subject go.” 
            Williams subsequently stopped Appellant on Interstate 30 after observing Appellant commit
a traffic violation. He informed Appellant of the reason for the stop and asked Appellant if he had
any unpaid traffic citations. Appellant answered that he did not. Williams also asked Appellant “if
he had ever been in any trouble, arrested.” Appellant responded, “[N]o, I’m clean.” Williams then
requested a driver’s license check on Appellant. The check showed that Appellant had a clear and
valid driver’s license, but indicated that Appellant had a “lengthy” criminal history, including several
arrests. Williams informed Appellant that he had learned Appellant had a criminal history. Appellant
said “that was in the past.” Williams explained that “‘[t]he fact that [Appellant] lied, saying he had
never been arrested” was significant. He stated that, based on his experience, it was common for
someone involved in criminal activity to avoid talking about his prior criminal history, if possible,
“because they don’t want to alert the officer that something may be going on.”
            Where the initial detention is based on a traffic violation, various combinations of factors will
support a reasonable suspicion of criminal activity, sufficient to justify a continued detention or
further questioning unrelated to the traffic violation. Powell v. State, 5 S.W.3d 369, 377 (Tex.
App.–Texarkana 1999, pet. ref’d). Here, Williams identified three factors that gave rise to reasonable
suspicion—Appellant’s prior arrests for drug offenses, lying about his prior criminal history, and
possession of the small jeweler’s bags. Williams testified that all three were common to those
engaged in criminal activity and that the jeweler’s bags were commonly used in crack cocaine
trafficking. In light of Williams’s personal knowledge and experience and the personal knowledge
of Burks as communicated to Williams, we conclude that these factors constituted sufficient specific
and articulable facts, when coupled with the reasonable inferences therefrom, to reasonably justify
Appellant’s detention after the issuance of a warning citation. See id. (nervousness, conflicting
information, prior drug offenses, and lying about prior arrests constituted reasonable suspicion). 
Consequently, the trial court did not abuse its discretion by concluding that Williams had reasonable
suspicion to detain Appellant after the issuance of the warning citation. Appellant’s second issue is
overruled.
Legality of Canine Search
            Appellant contends that Williams concluded his investigation of the alleged traffic offense
when he issued the warning citation. Consequently, Appellant’s argument continues, his continued
detention for the canine search was unreasonable. We agree that the purpose of the traffic stop was
complete with the issuance of the warning citation. However, we have held that Williams had
reasonable suspicion to continue Appellant’s detention. Therefore, the trial court did not abuse its
discretion by concluding that the “free air search” was lawful. Appellant’s third issue is overruled.
 
Sufficiency of the Evidence
            In his fourth issue, Appellant complains that the evidence was not legally sufficient to support
his conviction. In his fifth issue, he challenges the factual sufficiency of the evidence.
Standard of Review
            Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.–San Antonio 1999, pet. ref’d). The standard for reviewing a legal sufficiency challenge is
whether any rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to
the jury’s verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. A
successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. 
See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).
            The sufficiency of the evidence is measured against the offense as defined by the
hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
Such a charge would include one that “accurately sets out the law, is authorized by the indictment,
does not unnecessarily increase the State’s burden of proof or unnecessarily restrict the State’s
theories of liability, and adequately describes the particular offense for which the defendant is tried.” 
Id.       
            The sole question in a factual sufficiency review is whether, considering all the evidence in
a neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga
v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). The court of criminal appeals has explained
that there are two ways in which the evidence may be factually insufficient. First, when considered
by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a
reasonable doubt. Id. Second, there may be both evidence supporting the verdict and evidence
contrary to the verdict. In the second scenario, weighing all the evidence in this balancing scale, the
contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have
been met, so the guilty verdict should not stand. Id. at 484-85. Thus, evidence of guilt can
preponderate in favor of conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt. Stated another way, evidence supporting guilt can outweigh the contrary proof
and still be factually insufficient under a beyond-a-reasonable-doubt standard. Id. at 485. 
            Because the jury is the sole judge of the facts, we must give deference to jury findings. Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). What weight to give contradictory testimonial
evidence is within the sole province of the jury because it turns on an evaluation of credibility and
demeanor. Id. at 408-09. We may not substitute our judgment for that of the factfinder. Zuniga, 144
S.W.3d at 482. The jury may choose to believe some testimony and disbelieve other testimony. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).
            A person who has been convicted of a felony commits an offense if he possesses a firearm
after conviction and before the fifth anniversary of his release from confinement following conviction
of the felony or his release from supervision under community supervision, parole, or mandatory
supervision, whichever date is later. Tex. Pen. Code Ann. § 46.04(a)(1). We analyze the sufficiency
of the evidence in cases involving possession of a firearm by a felon under the rules adopted for
determining the sufficiency of the evidence in cases of possession of a controlled substance. Corpus
v. State, 30 S.W.3d 35, 37 (Tex. App.–Houston [14th Dist.] 2000, pet. ref’d). Therefore, the State
was required to prove that Appellant knew the weapons existed and that he exercised actual care,
custody, or management over them. See id. at 38. When the accused is not in exclusive control of the
place the weapon is found, there must be independent facts and circumstances linking the accused to
the weapon. Id. 
Legal Sufficiency
            Appellant argues that legally insufficient evidence connects him to the actual care, custody,
control, or management of the firearms found in the trunk. We disagree. 
            Viewed in the light most favorable to the verdict, the evidence showed that Appellant was the
only person in the vehicle when he was stopped by Deputy Burks. The trunk was locked at the time. 
Burks saw two keys on Appellant’s key chain–one with a square head and one with a round head. 
Burks believed the key with the round head was a trunk key because the head of a trunk key is round.
            Appellant consented to a search of his vehicle, and Burks searched the driver’s side and front
passenger side of the vehicle. Burks asked Appellant if he could search the trunk, and Appellant
started to hand him the keys. Appellant then denied consent for the search and pulled back the keys. 
At that time, Appellant did not state that he did not have access to the trunk. However, he told Officer
Williams during the second traffic stop that he did not have a key to the trunk. After forcibly gaining
access to the trunk, Williams discovered a hard gun case with two rifles and a shotgun. Underneath
the gun case, Williams found two pairs of shoes, a black pair and a blue pair. One of the shoes had
a bundle of cash wrapped in two Texas Department of Criminal Justice grievance forms bearing
Appellant’s signature. Another shoe contained a Newport cigarette package. This brand of cigarettes
was found in the passenger compartment. Appellant was wearing one pair of the shoes in court
during the trial. Because Appellant was the sole occupant of the vehicle and several of his personal
possessions were found in the trunk along with the firearms, we hold that the evidence is legally
sufficient to support his conviction. Appellant’s fourth issue is overruled.
Factual Sufficiency
            In addition to the evidence discussed above, several members of Appellant’s family testified
that the vehicle belonged to Appellant’s brother, that the vehicle was loaned to Appellant in Illinois,
and that Appellant drove the vehicle to Texas and was on his way back to Illinois when he was
stopped. Appellant’s son testified that there was no key to the trunk of the vehicle. One of
Appellant’s daughters testified that she had seen a key in the ignition, but had not seen a key ring or
any other keys. Appellant also points out that his fingerprints were not found on the firearms.
            In determining the credibility of the witnesses, a jury may chose to believe some witnesses
and disbelieve others. Margraves, 34 S.W.3d at 919. Here, the jury chose to disbelieve Appellant’s
family members and gave little weight, if any, to the absence of Appellant’s fingerprints on the
firearms. This was the jury’s prerogative, and we will not disturb those findings. See Cain, 958
S.W.2d at 407. Consequently, after considering all of the evidence in a neutral light, we hold that a
rational jury could have found Appellant guilty beyond a reasonable doubt. Appellant’s fifth issue
is overruled.
 
Denial of Motion for Continuance
            In his sixth issue, Appellant contends the trial court erred in denying his motion for
continuance, which was based on the absence of a material witness. Because the trial court denied
the motion, Appellant maintains that he was prejudiced because “[t]he testimony of the absent witness
probably would have resulted in an acquittal. . . .”
            On the day his trial began, Appellant filed a pro se motion for continuance based on the
absence of a material witness. In his motion, Appellant averred that the witness, Arthur Coleman,
lived in St. Ann, Illinois and had not been notified of the trial setting in time to testify. Appellant
alleged that Coleman owned the vehicle Appellant was driving when he was stopped by Officer
Williams and also owned the firearms found in the trunk. According to Appellant, Coleman would
testify that Appellant had no knowledge of the firearms in the vehicle. The trial court denied the
motion without a hearing.
            When, as here, a defendant requests a continuance based on the absence of a witness, the
motion requesting the continuance must include certain information, including the following:
 
            1.           The name of the witness and his residence, if known, or that his residence is not
known.
 
              2.           The diligence which has been used to procure his attendance; and it shall not be
considered sufficient diligence to have caused to be issued, or to have applied for,
a subpoena, in cases where the law authorized an attachment to issue.
 
. . . .
 
              4.           That the witness is not absent by the procurement or consent of the defendant.
 
 
Tex. Code Crim. Proc. Ann. art. 29.06 (Vernon 1989). Furthermore, all motions for continuance 
must be sworn to by a person having personal knowledge of the facts relied on for the continuance. 
Id. art. 29.08. 
            Appellant does not state in his motion the diligence he underwent to secure Coleman’s
testimony nor does he state that Coleman’s absence was not due to Appellant’s request or consent. 
Additionally, the motion is not sworn by someone with personal knowledge of the facts relied on for
the continuance. Because of these defects, Appellant’s motion is insufficient to preserve error, if any,
for our review. See Jones v. State, 902 S.W.2d 102, 107 (Tex. App.–Houston [1st Dist.] 1995, pet.
ref’d). Appellant’s sixth issue is overruled.
 
Ineffective Assistance of Counsel
            In his seventh issue, Appellant argues that the “trial court abused its discretion by requiring
Appellant to go to trial with ineffective counsel whom Appellant did not retain and the court did not
appoint.” We construe Appellant’s complaint as twofold: (1) that the trial court denied Appellant his
Sixth Amendment right to counsel by denying Appellant’s request for a continuance to obtain new
counsel and (2) that Appellant received ineffective assistance of counsel at trial.
 
Denial of Right to Counsel
            An accused may not manipulate his right to select counsel so as to obstruct the orderly
procedure of the courts or to interfere with the fair administration of justice. Robles v. State, 577
S.W.2d 699, 704 (Tex. Crim. App. [Panel Op.] 1979). Accordingly, an accused may not wait until
the day of trial to demand other counsel or to request appointed counsel’s dismissal so he can retain
counsel. Id. We review the trial court’s grant or denial of a motion for continuance for an abuse of
discretion. Janecka v. State, 937 S.W.2d 456, 458 (Tex. Crim. App. 1996).
            Prior to his conviction, Appellant was represented by two different attorneys during a two-month period preceding his trial.


 On April 22, 2003, Appellant’s attorney filed a motion to
withdraw. In his motion, counsel stated that “[Appellant] has failed to cooperate with the efforts of
attorney to defend said matter and there is confusion and discord between Attorney and [Appellant].”
The trial court granted the motion by order signed on June 24, 2003. 
            According to the record, Appellant’s second attorney (“counsel”) first “saw” Appellant on
May 28, 2003. He first “interviewed” Appellant during a jail visit on June 6, 2003, but was not
“formally retained” until June 12, 2003. Subsequently, counsel filed a motion to suppress evidence,
made court appearances on Appellant’s behalf, and co-signed at least one appearance and
announcement form with Appellant. The trial court set a trial date for June 30. Four days before trial,
counsel visited Appellant in jail. At that time, Appellant informed counsel that he no longer wanted
counsel to represent him. Appellant did not communicate to the court that he wanted to obtain new
counsel.  
            On June 30, counsel filed a motion to withdraw citing Appellant’s lack of cooperation. He
also filed a motion for continuance in which he alleged that he was not ready for trial. Specifically,
counsel alleged that he had been retained to pursue and present a pretrial motion to suppress, but later
learned that the trial court’s practice was to take up such motions during trial. Therefore, he would
be required to proceed to trial before securing a ruling on the motion to suppress and had not had
adequate time to prepare. On the trial date, the trial court was informed that Appellant did not want
to go to trial and conducted a pretrial hearing to address the matter.
            The record shows that the discord between Appellant and his counsel was apparent at the
beginning of the hearing and escalated as the hearing proceeded. During several exchanges with
counsel, Appellant stated that counsel was ineffective and refused to accept any explanation or
assurances from counsel concerning his defense. Appellant informed the trial court that neither he
nor his family had hired counsel to represent him and that he did not want to go to trial until he was
represented by an attorney of his choice. Counsel expressed his own concerns about proceeding with
the representation and informed the trial court that Appellant had threatened to file a grievance against
him if he were forced to go to trial. Counsel also told the court that when he talked with Appellant
on May 28, Appellant did not say his case was one that probably would have to be tried. Counsel
related that when he informed Appellant that the hearing on the motion to suppress would be an
integral part of the trial process instead of a pretrial matter, Appellant refused to cooperate further,
saying he did not want to have a trial.  
            The trial court denied counsel’s motion to withdraw and attempted to address other issues. 
However, Appellant continued to protest his counsel’s continued representation at trial, and the
following exchange occurred: 
 
              [APPELLANT]:  I don’t want to go to trial with [counsel].
 
              THE COURT:     See. You can use these tactics on me from now on and never get
to trial. The Court is not going to let you do that. . . .
 
              [APPELLANT]:  I’m asking for due process.
 
. . . .
 
THE COURT:I’m asking you a question. . . .
 
 
              [APPELLANT]:  Well, I can’t announce that, your Honor, because I’m not going.
 
              THE COURT:     You are going to trial.
 
              [APPELLANT]:  Not with . . . [counsel].
 
. . . .
 
              [APPELLANT]:  I want the record to show that my brother is in the process of
hiring me another attorney. He never was hired by me, nor my
family.
 
              THE COURT:     Okay. And he–you can get another attorney here as quick as you
want to. But this has been set for several weeks. And so have a
seat right over here, and let’s bring the jury in.


The trial proceeded, and nothing in the record indicates that Appellant attempted to substitute
another attorney. On July 2, Appellant filed a written waiver of his right to counsel. He also
discharged counsel at the conclusion of the evidence and made his own closing argument.
             It is apparent from the record that the trial court concluded Appellant’s request for a
continuance to seek new counsel was an attempt to “obstruct the orderly procedure of the courts or
to interfere with the fair administration of justice.” See Robles, 577 S.W.2d at 704. The record
supports the trial court’s conclusion. Therefore, the trial court did not abuse its discretion by denying 
Appellant’s request for a continuance to obtain new counsel. See id. 
Ineffective Assistance of Counsel
            To prevail on an ineffective assistance of counsel claim, Appellant must show that the
performance of his attorney fell below an objective standard of reasonableness. Strickland v.
Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). He must also show
that “there is a probability sufficient to undermine confidence in the outcome that but for counsel’s
unprofessional errors, the result of the proceeding would have been different.” Id., 466 U.S. at 694,
104 S. Ct. at 2068. A “reasonable probability” is a probability sufficient to undermine confidence
in the outcome of the proceeding. Id.; Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App.
1986). In evaluating the effectiveness of counsel, the reviewing court looks to the totality of the
representation and the particular circumstances of each case. Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999). The appellant has the burden of proving ineffective assistance of counsel
by a preponderance of the evidence. Moore v. State, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985). 
The record must affirmatively demonstrate the alleged ineffective assistance. McFarland v. State,
928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Moreover, the appellant must overcome the
presumption that the challenged action of counsel might be considered sound trial strategy. 
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).
            The record reveals that Appellant’s counsel presented a vigorous defense, including extensive
cross examination of the State’s witnesses and the presentation of witnesses favorable to Appellant.
He lodged a number of objections to the admission of certain evidence and presented forceful legal
arguments in support of each objection. In reviewing the totality of the representation, we cannot
say that Appellant’s counsel was ineffective. Nonetheless, Appellant makes three specific
complaints about counsel’s performance.
            Appellant first notes that counsel failed to pick up the case file from his prior attorney.
According to Appellant, the file contained an affidavit from the vehicle’s owner stating that
Appellant did not have a key to the trunk. This affidavit, Appellant urges, could have proved his
innocence. Thus, the substance of Appellant’s complaint is that because counsel did not pick up the
file, the affidavit was not admitted as evidence at trial, and this omission resulted in Appellant’s
conviction. 
            Appellant’s argument presupposes the admissibility of the affidavit. However, hearsay is
not admissible except as provided by statute, the Texas Rules of Evidence, or other rules prescribed
pursuant to statutory authority. Tex. R. Evid. 802. The affidavit Appellant describes is hearsay,
and Appellant has not shown that it falls within any exception to the general rule prohibiting hearsay
evidence.


 Trial counsel cannot be ineffective for failing to offer inadmissible evidence. See
Grantham v. State, 116 S.W.3d 136, 147 (Tex. App.–Tyler 2003, pet. ref’d).
            Appellant next urges that counsel was ineffective by failing to inform the trial court that
Appellant had not violated any traffic law prior to being stopped by Officer Williams. We have held
that Appellant violated a traffic law in Williams’s presence. It is not ineffective assistance for
counsel to forego making futile arguments or objections. See Wood v. State, 4 S.W.3d 85, 91 (Tex.
App.–Fort Worth 1999, pet. ref’d). 
            Finally, Appellant contends that counsel did not give him advance notice of the trial date. 
During the June 30 hearing, the trial court, while referring to an appearance and announcement form,
stated that “on June 19, I wrote in here for jury selection June 30, ‘03, at 9:00 o’clock a.m.
[Counsel’s] signature is there, and your signature is there.” Appellant did not contradict the trial
court’s statement. Consequently, the record affirmatively shows that Appellant had prior notice of
the trial setting.
            Based upon our review of the record, we conclude that Appellant has failed to show that
counsel’s performance fell below an objective standard of reasonableness. Thus, Appellant has
failed to satisfy the first prong of Strickland, and we need not address the second prong. Because
Appellant has not shown that he was deprived of his Sixth Amendment right to counsel or that his
trial counsel was ineffective, Appellant’s seventh issue is overruled.
 
Admissibility of Evidence
            In his eighth issue, Appellant asserts that the trial court reversibly erred by admitting into
evidence the cocaine found in the trunk of the vehicle Appellant was driving. 
Standard of Review
            As a general rule, evidence of other crimes, wrongs, or acts is not admissible to prove the
character of a person in order to show action in conformity therewith. Tex. R. Evid. 404(a).
However, such evidence may be admissible for other purposes, such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid.
404(b). To satisfy the requirements of Rule 404(b), the trial court must conduct a balancing test to
determine whether the probative value of the evidence is “substantially outweighed by the danger
of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence.” Tex. R. Evid. 403. After conducting the
balancing test, the trial court “must be given wide latitude to exclude, or particularly in view of the
presumption of admissibility of relevant evidence, not to exclude relevant evidence as he sees fit. 
So long as the trial court operates within the boundaries of its discretion, an appellate court should
not disturb its decision, whatever it may be.” Montgomery v. State, 810 S.W.2d 372, 390 (Tex.
Crim. App. 1990) (op. on reh’g). 
Admission of the Evidence
            As previously noted, one of the shoes found in the trunk contained a Newport cigarette
package. Inside the package was 2.06 grams of cocaine. Appellant objected to the admission of the
cocaine. In response, the State argued that the cocaine was same transaction contextual evidence.


 
The trial court overruled Appellant’s objection and admitted the cocaine. On appeal, Appellant
argues, in substance, that the cocaine was inadmissible because it was not same transaction
contextual evidence and because it was substantially more prejudicial than probative. On appeal,
the State abandoned its contention that the cocaine was same transaction contextual evidence,
admitting that “the appellant[’s argument in that regard] may be correct.” However, the State also
reminds us that an evidentiary ruling must be sustained if the ruling is correct on any theory of law
applicable to the case. See Johnigan v. State, 69 S.W.3d 749, 755 (Tex. App.–Tyler 2002, pet.
ref’d) (citations omitted). We need not explore other theories of admissibility because we agree with
the State’s alternative argument that the error, if any, committed by the trial court in admitting the
evidence was harmless. Therefore, for purposes of analysis, we will assume error in the admission
of the evidence and address Appellant’s contention that the error was harmful.
Harm Analysis
            Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that any nonconstitutional
error that does not affect substantial rights must be disregarded. See Tex. R. App. P. 44.2(b). 
Substantial rights are not affected by the erroneous admission of evidence “if the appellate court,
after examining the record as a whole, has fair assurance that the error did not influence the jury, or
had but a slight effect.” Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (citations
omitted). The erroneous admission of an extraneous offense is nonconstitutional error. Johnson
v. State, 84 S.W.3d 726, 729 (Tex. App.–Houston [1st Dist.] 2002, pet. ref’d). In conducting the
harm analysis, an appellate court should consider everything in the record, including any testimony
or physical evidence admitted for the jury’s consideration, the trial court’s instructions to the jury,
the State’s theory, any defensive theories, closing arguments, and even voir dire if material to the
appellant’s claim. Motilla , 78 S.W.3d at 355-56; Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim.
App. 2000). In assessing harm, the factors to be considered are the nature of the evidence supporting
the verdict, the character of the alleged error, and how the evidence might be considered in
connection with the other evidence in the case. Motilla, 78 S.W.3d at 355; Morales, 32 S.W.3d at
867. Whether the State emphasized the error can also be a factor. Motilla, 78 S.W.3d at 356. 
            The sole contested issue in this case was whether Appellant had possession (actual care,
custody, control, or management) of the firearms. Appellant’s defensive theory was that he had no
access to the trunk of the vehicle and therefore could not have possessed the firearms found during
the search. We limit our analysis to that issue and apply the factors discussed in Motilla and
Morales to the record before us.
            1. Nature of the evidence supporting the verdict. The evidence shows that Appellant was
the only person in the vehicle when Deputy Burks stopped him. The trunk was locked at the time. 
During the stop, Appellant had a key ring with two keys on it–one with a square head and one with
a round head. Burks believed the key with the round head was a trunk key because “the head of a
trunk key is round.”
            Appellant consented to a search of his vehicle, and Burks searched the driver’s side and front
passenger side. On the passenger’s side, Burks found a green satchel containing “fifty to sixty” small
jeweler’s bags. Burks asked Appellant if he could search the trunk, and Appellant started to hand
him the keys. Appellant then denied consent for the search and pulled back the keys.  
            When Williams began his search, he asked Appellant if he had a key to the trunk. Appellant
answered that he did not. He said that the vehicle belonged to another person and he (Appellant) did
not need to get into the trunk. At that time, only one key was on Appellant’s key ring. Williams
never found the second key that Burks described in his testimony. From this evidence, the jury could
have concluded that the second key was a trunk key and that Appellant disposed of it after Burks
released him. The jury also could have concluded that Appellant disposed of the key to thwart any
further attempts to search the trunk.
            During the second stop, Appellant told Williams that he had been in Dallas for six or seven
days and was headed back to Illinois. When asked whether he had any luggage, Appellant initially
said he did, but later stated that he did not. He could not explain why he did not have any clothes
with him. Williams asked Appellant whether there were any weapons in the vehicle, to which
Appellant replied that “if there is, they’re not mine. He said, there may be a rifle and – some rifles
and maybe a shotgun in there.” 
            After the car was driven to the Hopkins County Sheriff’s Office and Williams gained access
to the trunk, the first item he discovered was a hard gun case containing two rifles and a shotgun. 
This discovery, coupled with Appellant’s specific statement about what “may be” in the trunk,
supports a conclusion that Appellant had knowledge of the firearms. Also in the trunk were the
green satchel and the jeweler’s bags that were in the front passenger area when Burks searched the
vehicle in Rockwall County. Except for a suggestion that Officer Williams “planted” the green
satchel in the trunk, Appellant did not explain how the satchel was moved from the passenger
compartment to the trunk. Taken together, this testimony and the testimony that Appellant was the
sole occupant of the vehicle support a conclusion that Appellant had access to the trunk.
            Moreover, various personal items were found in the trunk, including (1) men’s clothing in
a plastic garment bag and in other luggage, (2) Appellant’s Texas inmate card, (3) a black shoe with
cocaine inside a Newport cigarette package found in the toe, (4) a blue shoe containing
approximately $1,600 in United States currency wrapped in two inmate grievance forms on which
Appellant’s signature appeared, and (5) a set of Pocket Tech digital scales. The gun case was on top
of these items. Several unopened Newport cigarette packages, as well as one empty Newport
package, were found in the passenger compartment. Moreover, Williams identified Appellant’s
shoes at trial as matching the description of the blue shoe found in the trunk. The jury could have
concluded that these items belonged to Appellant, which provides further support for the conclusion
that Appellant had access to the trunk.
            Contrary to Appellant’s defensive theory, the State presented overwhelming evidence that
Appellant had access to the trunk. This factor weighs in favor of the State.
            2. Character of the alleged error. Officer Williams’s testimony was approximately one
hundred pages of a three hundred page record. Williams was questioned extensively by the
prosecutor and defense counsel about the traffic stop and the search. He described each item
recovered during the search, including the cocaine, and where the items found in the trunk were
situated in relation to the gun case. At least three times during Williams’s description of the various
items, the State asked questions about the relationship between the jeweler’s bags, cocaine, and
firearms. Each time, Williams answered that in his experience, possession of those items was
consistent with narcotics or crack cocaine trafficking. The State also presented a DPS criminalist,
who testified that the substance found during the search was 2.06 grams of cocaine in the base form. 
The criminalist’s testimony was approximately ten pages. Appellant made his own closing argument
and pointed out to the jury that although Williams had testified that the cocaine was found in the
trunk, he was not the officer who actually found the cocaine. Appellant then questioned why the
officer who actually found the cocaine “didn’t get up there and testify that he found the drugs.” The
State responded, mentioning the cocaine briefly in its argument.
            Williams and the DPS criminalist testified in detail about the cocaine. Moreover, the State
elicited testimony at least three times from Williams that possession of jeweler’s bags, cocaine, and
firearms was consistent with narcotics or crack cocaine trafficking. The suggestion of crack cocaine
trafficking was more credible because of the presence of the cocaine. Therefore, the jury could have
concluded from this testimony that Appellant was trafficking in crack cocaine. Consequently, the
admission of the cocaine was prejudicial to Appellant. This factor weighs in his favor.
            3. Consideration of the cocaine in light of other evidence. The State made more than
passing references to the cocaine and presented testimony from which the jury could have concluded
that Appellant was trafficking in crack cocaine. However, that conclusion was not relevant to
whether Appellant had access to the trunk. Moreover, the evidence overwhelmingly showed that
Appellant was the sole occupant of the vehicle he was driving and had access to the trunk of the
vehicle in which the firearms were found. This factor weighs in favor of the State.
            Based upon the foregoing analysis, we conclude that the overwhelming nature of the evidence
against Appellant outweighs the prejudice from the admission of the cocaine. As such, we have
more than a fair assurance that the error did not influence the jury or had but a slight effect on its
verdict. Therefore, Appellant has not established that he was harmed by the admission of the
cocaine. Appellant’s eighth issue is overruled.
 
Jury Argument
            In his ninth issue, Appellant contends that the trial court erred in overruling his objection to
improper jury argument made by the prosecutor at the punishment phase of the trial. 
            To be permissible, jury argument must fall within one of the following four general areas:
(1) summation of the evidence; (2) reasonable deductions from the evidence; (3) response to
argument of opposing counsel; and (4) plea for law enforcement. Felder v. State, 848 S.W.2d 85,
94-95 (Tex. Crim. App. 1992). The first incident noted by Appellant occurred when the prosecutor
responded in his punishment closing argument to Appellant’s statement that he had never had a
weapon and would not harm another person. The prosecutor attempted to read a portion of an
indictment relating to a 1992 robbery conviction, which alleged that Appellant had intentionally
threatened and placed the named victim in fear of imminent injury and death and that Appellant used
and exhibited a knife during the offense. Appellant immediately objected, contending that the
indictment was false and that it was proven in court that he did not have a weapon. Appellant also
contended that a Dallas judge had entered a nunc pro tunc order correcting the indictment. However,
no such order is included in the record.
            The prosecutor urged that the indictment had been admitted into evidence and that he was
entitled to read from it. The trial court overruled Appellant’s objection and allowed the prosecutor
to continue. The prosecutor then read the complete allegation and informed the jury that Appellant
had done nothing in his adult life but commit crimes. The indictment was read in response to
Appellant’s argument. The prosecutor’s comment about Appellant’s criminal history constitutes
proper summation of the evidence and drawing reasonable inferences therefrom. The trial court did
not err in overruling Appellant’s objection.
            The second incident occurred after the prosecutor mentioned the cocaine found in Appellant’s
vehicle. Appellant objected, stating that they had a chance to try him on the drug charge or the gun
charge. The prosecutor responded, “And I’m trying you on both since you bring them up.” The
State concedes that this statement was legally incorrect and lies outside the four permissible areas
of proper jury argument. However, the State also contends that Appellant cannot show harm.
            The alleged error is of the nonconstitutional variety. See Martinez v. State, 17 S.W.3d 677,
692-93 (Tex. Crim. App. 2000). Therefore, we apply Texas Rule of Appellate Procedure 44.2(b)
and disregard the error if it does not affect Appellant’s substantial rights. See Tex. R. App. P.
44.2(b). A substantial right is affected when the improper jury argument has a substantial and
injurious effect or influence on the jury’s verdict. See Simpson v. State, 119 S.W.3d 262, 266 (Tex.
Crim. App. 2003). In assessing whether improper jury argument is harmful, we consider three
factors: (1) the severity of the misconduct (or prejudicial effect); (2) any curative measures taken;
and (3) the certainty of conviction (or punishment assessed) absent the misconduct. Martinez, 17
S.W.3d at 692-93.
            The record reveals that the statement by the prosecutor was brief and not repeated. It was
made during the State’s punishment closing argument and was in response to Appellant’s objection. 
The remark could have been interpreted as a statement that Appellant was being tried on the firearms
charge and for possession of cocaine. It could also have been interpreted as a statement that
Appellant ultimately would be tried for both offenses, but not in the same trial. Therefore, the
remark was ambiguous. The trial court took no curative measures. However, the prosecutor
immediately stated, “Is he charged with them now? No. You can’t charge him with two crimes. We
have to take the first one first. That’s what we’re here about, which you found him guilty about.” 
Additionally, the jury charge on punishment related only to the firearm offense. Finally, the evidence
showed that Appellant had thirteen prior felony convictions. Eleven of those convictions were for
offenses such as theft, robbery, burglary of a vehicle, and unauthorized use of a motor vehicle. 
            Based upon our review of the record, we are persuaded that the jury had ample evidence
before it to support the imposition of a life sentence for the charged offense. We are also persuaded
that the prosecutor’s remark did not have a substantial and injurious effect or influence on the jury’s
assessment of punishment. Consequently, we hold that the prosecutor’s improper remark was
harmless. See Tex. R. App. P. 44.2(b). Appellant’s ninth issue is overruled.
 
Disposition
            Having overruled Appellant’s nine issues on appeal, we affirm the judgment of the trial
court.
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
Opinion delivered September 30, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


(PUBLISH)