

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-22-00199-CR, 04-22-00200-CR, 04-22-00201-CR, and 04-22-00202-CR

Roman Dexter **SOTO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court Nos. 7817, 7818, 7819, 7820
Honorable Kirsten Cohoon, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: August 16, 2023

AFFIRMED

Appellant Roman Dexter Soto appeals the trial court's denial of his motions to suppress evidence seized after a traffic stop. On appeal, Soto contends the officer lacked reasonable suspicion to stop him because he did not commit a traffic violation, and video evidence indisputably supports his contention. Because we conclude the officer had reasonable suspicion to believe Soto committed a traffic violation, we affirm the trial court's judgment.

---

[1] The Honorable Sandee Bryan Marion, Chief Justice (Retired) of the Fourth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.

## BACKGROUND

Boerne Police Department Officer Pedro Moncada was on routine patrol one evening and driving his patrol car on South Main Street. As he moved into the center turn lane of the street to stop and observe traffic, he saw a silver Nissan Pathfinder driving down South Main Street. According to Officer Moncada, the Pathfinder was traveling in the far-right lane, and he saw the Pathfinder move into the left lane as its driver signaled. Officer Moncada believed the driver had committed a traffic violation and initiated a traffic stop.

During the stop, Officer Moncada learned Soto was the Pathfinder's driver and smelled marijuana coming from the vehicle. He searched the vehicle and seized a gun, two medium sized plastic bags containing marijuana, several small baggies containing cocaine and different colored capsules, a brown vial containing a liquid substance, and several digital scales. Soto was subsequently charged with possession of 4,000 abuse units or more of a controlled substance, namely lysergic acid diethylamide, with intent to deliver (Trial Court Cause No. 7817), possession of four grams or more but less than 200 grams of a controlled substance, namely cocaine, with intent to deliver (Trial Court Cause No. 7818), possession of four grams or more but less than 400 grams of a controlled substance, namely 3,4-methylenedioxy-methamphetamine, with intent to deliver (Trial Court Cause No. 7819), and possession of four grams or more but less than 200 grams of a controlled substance, namely methamphetamine, with intent to deliver (Trial Court Cause No. 7820).

In each cause number, Soto moved to suppress all the evidence obtained in connection with the traffic stop, and the trial court set the motions for a suppression hearing. At the hearing, the trial court heard testimony from Officer Moncada, who testified he stopped Soto because Soto committed a traffic violation by failing to signal 100 feet prior to changing lanes. Officer Moncada explained as soon as Soto flashed his signal, he started changing lanes, and Soto's action was a

traffic violation. The trial court also watched dashcam video from Officer Moncada's patrol car showing the incident. At the end of the hearing, Soto argued Officer Moncada did not have reasonable suspicion to stop him for a traffic violation. The trial court denied his motions to suppress and entered findings of fact and conclusions of law, specifically concluding Officer Moncada had probable cause to stop Soto because he "failed to signal continuously for 100 feet before changing lanes in violation of the section 545.104 of the Texas Transportation Code."

Soto filed motions for reconsideration, arguing Texas law does not require a motorist to maintain his signal continuously for 100 feet before changing lanes. At the reconsideration hearing, Soto argued "the 100-foot rule" applies only when a driver is turning, not when a driver is changing lanes, and the dashcam video clearly showed he had not committed a traffic violation. The State, however, asserted Texas law requires a driver to signal before changing lanes, and based on Officer Moncada's testimony, Soto did not activate his blinker before changing lanes. The trial court took the matter under advisement. It ultimately overruled Soto's motions for reconsideration and issued amended findings of fact and conclusions of law. It found Officer Moncada testified Soto signaled and changed lanes "at the same time," and it concluded "Texas law does not include a requirement that a driver signal a lane change for one hundred feet . . . it is clear that a driver must signal an intention to make a lane change" under section 545.104(a) of the Texas Transportation Code. The trial court further concluded Officer Moncada had probable cause to stop Soto because he changed lanes while simultaneously using his blinker, and the failure to signal an intention to change lanes is a traffic violation under section 545.104(a).

Soto pled guilty in all four cause numbers, and the trial court sentenced him to thirty years' confinement in each cause number, with the sentences to run concurrently, in accordance with a plea bargain agreement. Soto now appeals the trial court's rulings in each cause number, which we consolidated on appeal. He argues the trial court erred by denying his motions to suppress

because Officer Moncada did not have reasonable suspicion to initiate a traffic stop, and the subsequent seizure of evidence violated his constitutional and statutory rights under the Fourth Amendment of the United States Constitution and section 38.23 of the Texas Code of Criminal Procedure.

### STANDARD OF REVIEW

The Fourth Amendment of the United States Constitution and Article I, section 9 of the Texas Constitution protect individuals against unreasonable searches and seizures by government officials. *See, e.g.*, *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *Holder v. State*, 595 S.W.3d 691, 697 (Tex. Crim. App. 2020). Evidence seized by a police officer in violation of the Fourth Amendment is subject to the exclusionary rule codified in article 38.23(a) of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 38.23(a); *Miles v. State*, 241 S.W.3d 28, 32 (Tex. Crim. App. 2007) ("[T]he Texas exclusionary rule mirrors the federal one."). When, as in this case, a police officer performs a search without a warrant, the State bears the burden of establishing the search and seizure were reasonable under the totality of the circumstances. *Amador v. State*, 221 S.W.3d 666, 672–73 (Tex. Crim. App. 2007).

We review a trial court's motion to suppress evidence ruling under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We "give almost total deference to a trial court's determination of the historical facts that are supported by the record, particularly if the findings of fact are based on credibility and demeanor." *Miller v. State*, 393 S.W.3d 255, 262 (Tex. Crim. App. 2012). This is because the trial court is the sole trier of fact and judge of the witness's credibility and weight given to their testimony at a suppression hearing. *See Lerma*, 543 S.W.3d at 190; *Valtierra*, 310 S.W.3d at 447. The trial court is entitled to believe or to disbelieve all or any part of the witness's testimony. *Valtierra*, 310 S.W.3d at 447. We also "give the same level

of deference in reviewing a trial court's application of law to the facts or to mixed questions of law and fact, especially when the findings are based on credibility and are supported by the record." *Miller*, 393 S.W.3d at 262–63. "If the trial judge makes express findings of fact, we view the evidence in the light most favorable to his ruling and determine whether the evidence supports these factual findings." *Valtierra*, 310 S.W.3d at 447. But, if evidence is conclusive, we may disregard any trial court finding inconsistent with that conclusive evidence as unsupported by the record. *Miller*, 393 S.W.3d at 263. Finally, we review de novo the application of law to the facts, and we will affirm a ruling that is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Valtierra*, 310 S.W.3d at 447–48.

## APPLICABLE LAW

A police officer may make a warrantless traffic stop if the "reasonable suspicion" standard is satisfied. *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). Reasonable suspicion exists when, based on the totality of the circumstances, "the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Id*. (quoting *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013)) (internal quotation marks omitted). This standard is an objective standard, which disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). It is well-settled a police officer may conduct a traffic stop if he has reasonable suspicion a person committed a traffic violation. *See Lerma*, 543 S.W.3d at 190 ("In the context of a traffic stop, police officers are justified in stopping a vehicle when the officers have reasonable suspicion to believe that a traffic violation has occurred."); *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) ("Thus,

the appropriate limitation of an officer's discretion, under the Fourth Amendment, is the existence of a law and the actual commission of the offense[.]").

At issue in this appeal are two sections of the Texas Transportation Code—sections 545.104(a) and 545.104(b).  Section 545.104(a) requires a driver to signal an intention to make a lane change.  TEX. TRANSP. CODE § 545.104(a).  Texas courts have recognized the purpose of signaling an intention to make a lane change is to alert other drivers of the intended movement, and thus, "a lighted turn signal which does not blink prior to the lane change" does not satisfy the statutory mandate to signal an intention to turn.  *Coleman v. State*, 188 S.W.3d 708, 716–17 (Tex. App.—Tyler 2005, pet. ref'd).  Section 545.104(b) further requires a driver intending to turn left or right to "signal continuously for not less than the last 100 feet of movement" before the turn.  TEX. TRANSP. CODE § 545.104(b).

### APPLICATION

We begin by addressing Soto's contention Officer Moncada lacked reasonable suspicion to stop him.  According to Soto, Officer Moncada improperly stopped him for failing to signal continuously for 100 feet prior to changing lanes, and the trial court erred by concluding Officer Moncada made a reasonable mistake of law when stopping Soto.

At the suppression hearing, Officer Moncada testified he stopped Soto because Soto committed a traffic violation by failing to signal 100 feet prior to changing lanes.  When asked to clarify, Officer Moncada explained when Soto "signaled, he started moving over into the inside lane at the same time as he's – as he's signaling, he's moving over."  He further explained the action constituted a traffic violation because a driver is required to inform the other motorists of his intention by signaling 100 feet prior to changing lanes or turning.  On cross-examination, defense counsel asked the officer whether Soto used his signal before changing lanes, and Officer Moncada maintained Soto's actions were done "immediately" and "simultaneously."  He testified,

"[A]s soon as [Soto] hit the signal, he started changing lanes." In the trial court's amended findings of fact and conclusions of law, the trial court found Officer Moncada testified Soto changed lanes "at the same time" he was flashing his blinker. It concluded Texas law did not require a driver to signal a lane change 100 feet before changing lanes, but it did require a driver to signal an intention to make a lane change under section 545.104(a). It further concluded "[t]he stop was not unlawful merely because Officer Moncada incorrectly stated the law that justified the stop[,]" and cited *Coleman v. State* for support.

In *Coleman*, a police officer testified he saw the appellant change lanes before activating his blinker, and he stopped the appellant "for failing to signal a lane change for one hundred feet." 188 S.W.3d at 716. On appeal, the appellant argued Texas law did not require a driver to signal a lane change for one hundred feet. *Id*. The court agreed, but it held the officer had probable cause to initiate a traffic stop because the appellant had committed a traffic violation. *Id.* at 716–17. It reasoned because Texas law required a driver to signal an intention to change lanes and the officer had testified the appellant did not activate his blinker prior to changing lanes, the appellant had committed a traffic violation supporting the stop. *Id*. It concluded, "The stop was not unlawful merely because [the officer] incorrectly stated the law that justified the stop." *Id*. at 716

Here, the same analysis applies. Although Officer Moncada testified he stopped Soto for failing to signal 100 feet before changing lanes, he also testified he observed Soto change lanes without timely activating his signal. Throughout his testimony, he described Soto's actions as "simultaneous," "immediate," and "at the same time." He further detailed Soto "was in the middle of changing lanes when he signaled." When viewing this evidence in the light most favorable to the trial court's ruling and giving almost total deference to the trial court's determination of historical facts, we conclude Officer Moncada had reasonable suspicion to believe Soto committed a traffic violation justifying the traffic stop. *See Miller*, 393 S.W.3d. at 262; *Valtierra*, 310 S.W.3d

at 447. Here, Officer Moncada conveyed specific articulable facts that, when combined with rational inferences from those facts, could lead him to reasonably suspect Soto committed a traffic violation. *See Jaganathan*, 479 S.W.3d at 247. And as reasoned in *Coleman*, the stop was not unlawful simply because Officer Moncada referenced the incorrect law. *See* 188 S.W.3d at 716. Instead, contrary to Soto's contention the trial court improperly relied on a mistake of law principle, an objective basis existed to justify Officer Moncada's traffic stop. *See id.*; *see also Ford*, 158 S.W.3d at 492 (requiring us to disregard subjective intent of officer and look solely to whether objective basis for traffic stop existed); *Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.) (explaining the State "is not required to show a traffic offense was actually committed, but only that the officer reasonably believed a violation was in progress").

Soto next asserts video evidence undisputedly shows he did not commit a traffic offense. Specifically, Soto contends Officer Moncada's dashcam video unequivocally shows Soto flashed his blinker four times before changing lanes, and we can disregard the trial court's finding Soto's actions were simultaneous because it is contradicted by this conclusive evidence.

During the suppression hearing, the State introduced Officer Moncada's dashcam video. When asked about the video's quality, Officer Moncada testified the video was "two dimensional," and because his vision was three dimensional, he could see "everything," which may not be shown in the video. Defense counsel then played the dashcam video from Officer Moncada's patrol car, and the video shows the Pathfinder traveling in the far-right lane between two other vehicles. The vehicles become smaller and smaller as they drive away from the patrol car, and the lane markings become unclear when the driver of the Pathfinder begins flashing his left blinker and changes lanes.

Defense counsel replayed the video and asked Officer Moncada to explain details surrounding when Soto activated his blinker. Officer Moncada testified Soto did so when his vehicle was "still in the outside lane." Defense counsel replayed the video, began counting the flashes, and asked the officer whether he agreed Soto changed lanes after he flashed his blinker "four or five" times. Officer Moncada then testified, "No sir. He's doing it immediately." When pressed, the officer described Soto's actions as occurring "[s]imultaneously, as soon as he hit the signal, he started changing lanes." On redirect examination, Officer Moncada further testified Soto was "crossing over, signaling and moving over and crossing over into the next lane at the same time," and it happened "[s]imultaneously. At the same time."

Here, after viewing the dashcam video, we cannot say it indisputably contradicts Officer Moncada's testimony, requiring us to overturn the trial court's finding Soto's actions were simultaneous. *See Tucker v. State*, 369 S.W.3d 179, 187 n.1 (Tex. Crim. App. 2012) (Alcala, J., concurring) ("Rarely will videotape evidence actually be 'indisputable.'"). The video does not clearly show whether the Pathfinder's tires cross into the next lane as Soto is signaling because the lane change occurs when Soto's vehicle is traveling away from Officer Moncada's patrol car. As a result, because the video is not clear, we cannot disregard the trial court's finding. *See Miller*, 393 S.W.3d at 263 (stating we can disregard trial court's finding only if it is inconsistent with conclusive evidence).

Instead, we must defer to the trial court's finding of fact stating Officer Moncada observed Soto making a traffic violation by changing lanes while simultaneously activating his blinker, so long as it is supported by the evidence. *See id*.; *Valtierra*, 310 S.W.3d at 447. Here, Officer Moncada specifically testified he saw the Pathfinder's tires "moving over onto the other lane crossing over" at the same time Soto began flashing his blinker. When viewing this evidence in the light most favorable to the trial court's ruling, we conclude the evidence supports this finding

of fact made by the trial court. *See Valtierra*, 310 S.W.3d at 447–48. We therefore overrule Soto's final argument and hold the trial court did not err in denying Soto's motions to suppress.

## CONCLUSION

We affirm the trial court's judgments.

Luz Elena D. Chapa, Justice

Do Not Publish