Opinion issued April 23, 2009















     


In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00595-CR




SEAN LARUE BURTON, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1108399




MEMORANDUM OPINION 

          A jury found appellant, Sean LaRue Burton, guilty of aggravated robbery. 
After finding two enhancement allegations to be true, the jury assessed punishment
at 35 years in prison. In one issue, appellant contends that the trial court erred by
admitting evidence of an extraneous aggravated robbery offense during the guilt-innocence stage of trial. 
          We affirm. 
Background
          Donny Tan arrived for work at the Next Door Game Room, an illegal gambling
house, at about 6:00 p.m. Appellant arrived soon after Tan. The game room is a
secured facility and customers must be “buzzed in” by employees. Management had
instructed employees not to allow appellant entry because it suspected that appellant
had previously stolen money from the game room. Despite management’s
instructions, Tan allowed appellant entry. Tan knew that appellant was not only a
regular customer of the game room but, before Tan’s employment, had worked there
as a security guard.
          After he entered, appellant asked for change, and Tan went behind the counter
to the cash drawer. Appellant followed Tan behind the counter. When Tan opened
the cash drawer, appellant reached over Tan and grabbed money from the drawer. 
Tan began to question what appellant was doing, but then saw that appellant was
pointing a handgun at him. Appellant told Tan to give him all of the money. Tan told
appellant to take whatever he wanted. Appellant took $1800 in cash from the drawer
and put it in his pocket. Appellant continued to point the gun at Tan and asked Tan
to buzz him out the door.
          Shirley Moore also witnessed the robbery. Moore cooked food for the
customers at the Next Door Game Room. She also knew appellant because he had
been a security guard at the game room. Moore saw appellant behind the counter
with Tan. Moore also saw appellant grabbing money from the drawer and holding
a gun. She then saw appellant back away and demand that Tan let him out of the
game room. 
          Melodie Johnson was another employee of the game room. She saw appellant
behind the counter with Tan. Moore told Johnson that appellant had a gun, although 
Johnson could not see it. Because the counter was so high, Johnson also could not see
appellant’s hands. She could see appellant’s shoulder moving back in forth in the area
where the cash drawer was located. Immediately after appellant left, Tan told Johnson
that appellant had robbed him. 
          At trial, appellant defended against the robbery charge by asserting that Tan
fabricated the accusation. In his opening statement, appellant told the jury that the
evidence would show that Tan took the money to pay his gambling debts and then
accused appellant of the robbery. On cross-examination, defense counsel asked Tan,
“Are you sure there was a robber and you didn’t really just take the money that day?” 
Tan denied taking the money and denied that he was having financial problems. The
defense also cross-examined several of the State’s witnesses regarding whether Tan
was experiencing financial problems. Each denied any knowledge that Tan had
financial difficulties. 
          Appellant offered the testimony of Erica Allen, his live-in ex-girlfriend. Allen
had also worked at the game room before she was terminated. Allen, a convicted
felon, responded affirmatively when asked whether Tan had “financial problems.” 
          Appellant’s father, Lawrence Monroe, provided an alibi for his son. Monroe
told the jury that appellant was with him having dinner when the robbery occurred.           To rebut appellant’s fabrication and alibi defenses, the State offered evidence
of an extraneous robbery offense. The State showed that, six days after the Next Door
Game Room was robbed, another illegal gambling establishment, the Jackpot Junction,
was also robbed. The State offered the testimony of two Jackpot Junction employees
and the testimony of a robbery detective to show the following:
          •        The Jackpot Junction is only one and one-half miles from the Next Door
Game Room. 
 
          •        A man, whom the owner thought looked suspicious, came into the
Jackpot Junction. Other customers told her that his name was “Sean” and
that he had been a security guard at another gaming house.
 
          •        Before she left the Jackpot Junction, the owner alerted her daughter,
Amber, who was working the night shift at the game room, to the
suspicious man.
 
          •        The man had the same general physical description as appellant.
 
          •        The man played the machines for most of the night. Then, in the early
morning hours, the man followed Amber into the office, where she had
gone to get change for another customer. The man pointed a handgun at
Amber and told her to give him the money. The man then ordered Amber
to lie down on the floor and remain there for five minutes after he left.
 
          •        Neither Amber nor her mother could pick appellant out of a video line
up. Each testified that the monitor on which the video line up was shown
was small and difficult to see. At trial, Amber identified appellant as the
man who had robbed her. Amber’s mother also identified appellant in
the courtroom as the man she had seen in the Jackpot Junction before the
robbery.
          •        At the time of trial, appellant had not been charged with the offense.
          During closing statement, the prosecutor explained to the jury that the State was
allowed to offer the extraneous offense to rebut the alibi and fabrication defenses
asserted by appellant. The prosecutor further explained that the jury could consider
the extraneous offense “for things such as motive, opportunity, intent, preparation,
plan, knowledge, identities, absence of mistake or accident.” Later in closing
argument, the prosecutor told the jury that it could consider the extraneous offense
evidence for the purpose of identity and for “that purpose only.” 
          In addition, the court’s charge instructed the jury as follows: 
[I]f there is any evidence before you in this case regarding the
defendant’s committing an alleged offense or offenses other than the
offense alleged against him in the indictment in this case, you cannot
consider such evidence for any purpose unless you find and believe
beyond a reasonable doubt that the defendant committed such other
offense or offenses, if any, and even then you may only consider the
same in determining the motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident of the defendant,
if any, in connection with the offense, if any, alleged against him in the
indictment and for no other purpose.
          The jury found appellant guilty of aggravated robbery. Appellant was sentenced
to 35 years in prison. This appeal followed.
Admission of Extraneous Offense
          In his only issue, appellant contends that the trial court erred by admitting
evidence of the aggravated robbery at the Jackpot Junction. Appellant asserts that the
charged offense and the extraneous offense were not “sufficiently similar” and that the
probative value of the extraneous offense evidence is “substantially outweighed by the
danger of unfair prejudice.” The State responds that the extraneous offense evidence
was properly admitted to rebut appellant’s fabrication and alibi defenses. See Bass v.
State, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (holding that extraneous offense
evidence may be admitted to rebut fabrication defense); Booker v. State, 103 S.W.3d
521, 530 (Tex. App.—Fort Worth 2003, pet. ref’d) (concluding that an alibi defense
raises issue of identity and permits admission of extraneous offense evidence). 
          Appellant also argues that he was harmed by the admission of the extraneous
offense evidence because it had “a substantial and injurious effect” on the jury’s
verdict. We will assume without deciding error in the admission of the evidence and
proceed directly to the harm analysis. See Coleman v. State, 188 S.W.3d 708, 726
(Tex. App.—Tyler 2005, pet. ref’d) (assuming error in admission of complained-of
evidence and addressing appellant’s contention that error was harmful). 
          The erroneous admission of an extraneous offense is non-constitutional error. 
See Johnson v. State, 84 S .W.3d 726, 729 (Tex. App.—Houston [1st Dist.] 2002, pet.
ref’d); Boyd v. State, 899 S.W.2d 371, 375–76 (Tex. App.—Houston [14th Dist.]
1995, no writ). Rule of appellate procedure 44.2(b) therefore applies. Tex. R. App.
P. 44.2(b). 
          When applying rule 44.2(b), we disregard the error unless it affected appellant’s
substantial rights. Id. A substantial right is affected when the error had a substantial
and injurious effect or influence in determining the jury’s verdict. King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). Conversely, an error does not affect a
substantial right if we have “fair assurance that the error did not influence the jury, or
had but a slight effect.” Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App.
2001); Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
          In making this determination, we review the record as a whole, including any
testimony or physical evidence admitted for the jury’s consideration, the nature of the
evidence supporting the verdict, the character of the alleged error, and how it might
be considered in connection with other evidence in the case. Motilla v. State, 78
S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions,
the State’s theory and any defensive theories, whether the State emphasized the error,
closing arguments, and even voir dire, if applicable. Id. at 355–56.
          Here, the State presented ample evidence of appellant’s guilt. During its
case-in-chief, the State called three witnesses—Tan, Johnson, and Moore—who
testified about the details of the aggravated robbery. Each of these witnesses knew
appellant as a prior employee of the gaming room and as a customer. Tan and Moore
each testified that appellant robbed Tan at gunpoint. Johnson testified that she saw
appellant behind the counter in a restricted area and saw appellant’s shoulder moving
back and forth in the vicinity of the cash drawer.
          The State also presented testimony that, before the robbery, appellant was
prohibited by management from entering the Next Door Game Room. According to
the State’s witnesses, management suspected that appellant had stolen money one
night when he was there as a customer and thereafter prohibited him from entering.


 
          The defense thoroughly cross-examined each of the State’s witnesses. The
defense attacked the credibility of the three eyewitnesses by citing inconsistencies in
the witnesses’ testimony and by suggesting that Johnson and Moore lied to help Tan. 
The defense pointed out that Moore’s son is Tan’s friend and had worked for Tan. 
The defense also pointed out that Moore did not speak with the police immediately
after the robbery. 
          The only evidence directly supporting the defense’s theory that Tan stole the
money because he had financial problems was a single affirmative response by Erica
Allen, appellant’s former live-in girlfriend, who admitted to having prior felony
convictions. The only evidence of appellant’s alibi defense was the testimony of his
father. 
          Moreover, although the State referenced the extraneous offense in its closing
argument, the record reflects that the State did so to rebut appellant’s fabrication and
alibi defenses. At the same time, the State stressed to the jury that it should consider
the extraneous offense evidence for rebuttal only and for no other purpose. 
          Further, the record reflects that the trial court provided a limiting instruction
regarding testimony of extraneous offenses in the jury charge. See Morales v. State,
32 S.W.3d 862, 867 (Tex. Crim. App. 2000) (indicating reviewing court may consider
trial court’s instructions to jury, State’s theory, any defensive theories, and closing
arguments). Absent evidence to the contrary, the jury is presumed to follow the
instructions given in the court’s charge. Hutch v. State, 922 S.W.2d 166, 172 (Tex.
Crim. App. 1996). Appellant has not rebutted this presumption. 
          After reviewing the record, we have a fair assurance that any error in admitting
the extraneous offense evidence either did not influence the jury or had but a slight
effect. We conclude that any error in admitting the extraneous offense evidence did
not have a substantial or injurious effect on the jury’s verdict and did not affect
appellant’s substantial rights. See King, 953 S.W.2d at 271. Accordingly, we hold
that any error in admitting the complained-of evidence should be disregarded and is
harmless. See Tex. R. App. P. 44.2(b). 
          We overrule appellant’s sole issue. 
Conclusion
          We affirm the judgment of the trial court.
 
 
 
 
 
                                                             Laura Carter Higley
                                                             Justice
 
Panel consists of Justices Jennings, Keyes, and Higley.
 
Do not publish. See Tex. R. App. P. 47.2(b).