*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00313-CR

Dwight **BYRD**,
Appellant

v.

**STATE** of Texas,
Appellee

From the 81st Judicial District Court, Karnes County, Texas
Trial Court No. 07-12-00171-CRK
Honorable Ron Carr, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed:   July 1, 2009

AFFIRMED

Dwight Byrd appeals his convictions for aggravated assault of a public servant and possession of a deadly weapon in a penal institution. Byrd contends the trial court erred in admitting evidence in violation of Texas Rule of Evidence 404(b). We affirm the trial court's judgment.

## BACKGROUND

Byrd was an inmate at the Connally Unit of the Texas Department of Criminal Justice – Institutional Division, serving a sentence for robbery. Byrd was housed in the administrative segregation unit in one of only three cells at the prison with special design features to prevent inmate contact with prison guards. One of the features was a "security box," which was attached to the cell door and had a series of closures that allowed guards to leave items, including food, in the box and then secure a door, preventing the inmate from receiving the item while it was in the guard's hands.

Byrd was a "level three security" inmate, the most strictly supervised level of offender in the prison. Two corrections officers were utilized to transport Byrd whenever he was required to be removed from his cell. Because of circumstances unique to Byrd, a third officer was required to videotape Byrd's interactions with the guards as he was moved within the prison, and a supervisor was present as well. Security procedures were employed each time Byrd was taken from his cell. These procedures included the requirement that Byrd strip off all his clothing, pass them to the guards for inspection, and allow the guards to conduct a visual inspection of his mouth and other body cavities. He would also be required to kneel or squat with his hands behind his back and place them into the security box to allow a guard to handcuff him.

On October 3, 2007, Texas Department of Criminal Justice correctional officer Jose Ramirez was sent to prepare Byrd for a scheduled court appearance on an unrelated case. Officer Ramirez was accompanied by two other correctional officers, one operating a video camera and a sergeant. Utilizing the procedures described above, the team removed Byrd from his cell and took Byrd to a different cell so he could shower. The team then removed Byrd from the shower cell and took him back into his original cell. When he was returned to his original cell, Byrd placed his hands into the

security box to allow Officer Ramirez to release the handcuffs. When Officer Ramirez tried to unlock the second handcuff, Byrd turned and sliced Officer Ramirez's hand with a razor blade. Officer Ramirez ran to the infirmary where he received initial medical treatment. The treating nurse described the wound as a "very deep wound" with muscle and tendons exposed. He was later transported to the emergency room of a local hospital for treatment. During the subsequent investigation, a razor blade[1] was discovered two-to-three feet from the door of Byrd's cell.

Byrd was charged in a two-count indictment, which also included an allegation of a prior felony conviction. After a jury trial during which Byrd testified in his own defense, he was found guilty on both counts and sentenced to life on the aggravated assault charge and twenty years on the weapon charge.

## ANALYSIS

In four issues, Byrd asserts the trial could erred by permitting the State to place evidence before the jury about Byrd's possession of razor blades on dates other than the date charged in the indictment. Because each issue turns on the propriety of the trial court's decision to admit evidence of extraneous acts, we discuss all four issues together.

### *Applicable Law*

We review the trial court's decision to admit the evidence under an abuse of discretion standard. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). We will uphold the trial judge's decision unless it is outside the zone of reasonable disagreement. *Id.* Rule 404(b) of the Texas Rules of Evidence prohibits admission of crimes, wrongs, or acts extraneous to those for which a person is on trial to prove the defendant's character or that he acted in conformity with the

---

[1] Witnesses described the blade as one that was originally contained in a disposable razor, but removed from the razor's head.

prior misconduct. TEX. R. EVID. 404(b). However, evidence of prior misconduct is admissible if it has relevance apart from character conformity, such as to prove intent, establish motive, or rebut a defensive theory. *Moses v. State,* 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1991) (op. on reh'g).

### *Rule 404(b) Evidence Elicited During Cross-Examination of Byrd*

During its cross-examination of Byrd, the State asked whether he wore a retainer in his mouth[2] and whether razor blades had been found in his mouth during the time he was incarcerated. Byrd contends the trial court erred in permitting the State to elicit such evidence because it was inadmissible under Rule 404(b). We disagree.

Before Byrd testified, the defense called several inmates to testify on his behalf. The consistent theme portrayed by the defense was that Byrd did not cut Officer Ramirez with a razor blade. Rather, the defense claimed Officer Ramirez cut himself on sharp edges within the security box when he and Byrd struggled during the removal of the handcuffs.

Inmate Douglas Jones testified he was in a cell with a security box similar to that on Byrd's cell and had cut his hand several times on jagged edges within the box. He also told the jury he witnessed the altercation between Officer Ramirez and Byrd using a small mirror, approximately the size of a "small pinky finger," placed under his cell door. He claimed it "defie[d] logical probability" that Byrd could hide a weapon and use it to cut the officer because he was subjected to a full cavity search before he was removed from his cell.

---

[2] Byrd objected to testimony about the use of a retainer in his mouth, claiming the State was attempting to introduce "illicit 404(b) extraneous offenses." However, the jury never heard evidence from which it could have concluded the wearing of a retainer was a "bad act." Accordingly, we find no error based on this testimony.

Inmate Cleotis Jones also testified he had cut his hand on sharp edges within a security box. He told the jury it was common for the security boxes to have jagged edges. Inmate Joe Laws testified he was housed in the same cell as Byrd after the incident. He told the jury the security box was eventually repaired because correctional officers kept scratching their hands on the box.

Byrd denied cutting Officer Ramirez with a razor and told the jury the officer cut his hand on the security box. Byrd admitted to possessing several razor blades in his cell similar to the one found on the floor outside his cell after the attack. However, he testified he threw at least one razor blade out of his cell after Officer Ramirez was cut in response to the demands of the other officers. Byrd testified that at any time he had "five to ten razor blades" in his cell, which he used to cut his hair. He also claimed prison authorities allowed him to have the blades.[3]

In light of the defense theory and the testimony adduced to support it, we hold the trial judge did not abuse its discretion in permitting the State to question Byrd about hiding razor blades in his mouth. The evidence was used by the State in an effort to rebut Byrd's evidence that it was impossible for him to possess a razor blade because of the security measures employed by the prison and that the injury was caused by sharp edges in the security box.

### Rule 404(b) Evidence Elicited from Nurses

Byrd also contends the trial court erred in allowing two nurses to testify about Byrd hiding razor blades in his mouth. Terri Sauceda testified she found two razor blades in Byrd's mouth several months before the incident involving Officer Ramirez. Sauceda told the jury that in February 2007 Byrd claimed to have swallowed a large quantity of pills. In the process of administering medical attention to Byrd, Sauceda witnessed another nurse remove two razor blades from Byrd's

---

[3] Major Darren Wallace subsequently testified Byrd was neither allowed nor authorized to possess razor blades.

mouth. Shirley Pfeil testified there were two episodes in August 2007 where she observed that Byrd had razor blades hidden in his mouth.

Because both witnesses provided this testimony after Byrd testified and during the State's rebuttal, we hold the testimony went to rebut Byrd's defensive theory, and the trial court did not abuse its discretion in admitting the evidence.

### Rule 404(b) Evidence Elicited from Corrections Officer

Byrd next argues the trial court erred in permitting Major Darren Wallace to testify about other incidents in which Byrd possessed razor blades and his ability to hide them from the staff. Major Wallace was the State's first witness. He first testified about the security precautions taken by the prison staff with regard to Byrd. On cross-examination, and in response to questions from the defense, Major Wallace told the jury the assault against Officer Ramirez took place on a day Byrd was to appear in court to answer for charges he assaulted another corrections officer. Defense counsel also elicited testimony from Major Wallace showing the other trial involved a "a piece of metal" that was considered a deadly weapon. On redirect, Major Wallace testified without objection that Byrd was able to possess the weapon used in the prior assault despite the fact his cell was searched every two hours. Major Wallace next testified Byrd was "very adept" at hiding weapons, he knew of prior "incidences where [Byrd] had a razor blade in his mouth," and Byrd was able to hide the razors from the correctional staff. It is the last portion of Major Wallace's testimony that Byrd contends was admitted in violation of Rule 404(b).

Byrd objected to the testimony concerning his alleged "adeptness" at hiding weapons on the basis that the "question calls for speculation and is argumentative." We will not consider any error based on this testimony because the ground for complaint on appeal is not the same as that urged in

the trial court. *See Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). The rest of Major Wallace's testimony came before Byrd's opening statement and before any evidence concerning the defensive theory described above. We therefore disagree with the State's argument that the testimony was proper rebuttal to Byrd's defensive theory. The State asserts that by questioning Major Wallace about security measures employed by the prison staff, including strip searches, Byrd had presented his theory to the jury before it elicited the disputed testimony. Byrd's questions about security measures may have foreshadowed his defense, but the record does not support the State's contention. Accordingly, we hold the trial court erred in allowing Major Wallace to testify about prior instances when Byrd had hidden razor blades in his mouth.

Because we have determined the trial court erred, we determine the harm, if any, caused by the error. The admission of evidence in violation of Rule 404(b) is not constitutional error, and therefore we reverse only if the error affected Byrd's substantial rights. *See Coleman v. State*, 188 S.W.3d 708, 726 (Tex. App.—Tyler 2005, pet. ref'd), *cert. denied, Coleman v. Texas*, 549 U.S. 999 (2006); Tex. R. App. P. 44.2(b). Stated another way, we will affirm the trial court's judgment "if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect." *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

Based on our review of the entire record, we conclude the error had but slight effect on the jury. During his testimony, Byrd admitted to possessing "five to ten" razor blades in his cell and admitted he removed the blades from the disposable razors issued by the State for his use. He essentially confessed to the weapon charge for which he was on trial. And, it did not matter if he obtained the razor used to attack Officer Ramirez from his mouth or some other location in his cell. The gravamen of the assault was the use of the razor blade to cause injury to the victim and whether

the razor blade was a deadly weapon. Several witnesses, including Major Wallace and a nurse, stated the razor blade was a deadly weapon. Nurse Sauceda told the jury she worked on cases where people died from injuries inflicted by a similar razor blade. The jury also heard several witnesses testify Byrd cut Officer Ramirez with a razor blade, and it viewed photographs from the videotape that showed a small metal object in Byrd's hand at the time of the attack. The defense elicited testimony that Byrd was accused of previously attacking a guard with a deadly weapon and his cell was searched every two hours. The jury also heard of the special precautions taken with Byrd, including videotaping all interactions and housing him in one of only three cells in the prison with a security box. Major Wallace's testimony merely echoed evidence from later witnesses, properly before the jury, that Byrd had hidden razor blades in his mouth.

## CONCLUSION

We overrule Byrd's issues and affirm the trial court's judgment.

Steven C. Hilbig, Justice

Do Not Publish