In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00234-CR**
_____

**THE STATE OF TEXAS, Appellant**

**V.**

**CODY DYLAN SELPH, Appellee**

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Cause No. 22,994**

**MEMORANDUM OPINION**

Appellee Cody Dylan Selph was charged with the offense of possession of a controlled substance, namely methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.115(b) (West 2010). Selph filed a pretrial motion to suppress the evidence, which the trial court granted. The State filed this interlocutory appeal from the trial court's order. In one issue, the State complains that the trial court erred by finding that the arresting officer in this case did not have reasonable suspicion to initiate a traffic stop. We reverse the trial court's order.

1

## I. Background

The trial court held a hearing on Selph's motion to suppress on May 15, 2014. Officer Dallas Early testified at the hearing. While on patrol the night of March 1, 2013, Early received a call from dispatch regarding a possible reckless driver. At the time he received the call, Early understood that dispatch had received a call reporting that a driver of "[a] white Tahoe with rims" was driving recklessly. Dispatch informed Early that the vehicle was traveling from North Houston Street in Livingston, Texas toward Z's Food Mart. Dispatch did not tell Early the identity of the person that had reported the reckless driver. Dispatch also did not tell Early what the white Chevy Tahoe was doing that was reckless.

At the time he received the call, Early was near the reported area of the reckless driver, so he responded to the call and started looking for a vehicle that matched the description. About two minutes after receiving the dispatch call, Early identified a vehicle matching the description he was given. Early did not immediately activate his lights, but instead followed behind the vehicle. While following the vehicle, Early observed that it had a temporary registration tag, but the tag was blurry and he could not read the numbers or other identifying marks. According to Early, the license plate was visible but not legible. Early later identified Selph as the driver of the vehicle.

While following behind the vehicle Early did not notice any signs of erratic or reckless driving. However, when "the vehicle went to change into the other lane . . . the left side of the tires crossed the centerline before [Selph] started signaling." Stated differently, when Selph moved his vehicle from the outside lane to the inside lane of the roadway, the left side of his vehicle was already in the left lane before Selph activated his signal. According to Early, drivers are required to signal an intention to change lanes, and when Selph failed to engage his signal before he started changing lanes, Early initiated a traffic stop. We note that Early's patrol vehicle is apparently capable of recording traffic stops; however, there is no video of this traffic stop in the record. According to Early, his camera system had malfunctioned.

During the traffic stop, Early asked Selph if there was anything in the vehicle Early needed to know about. Selph responded "no" and then told Early he could search the vehicle. Early searched the vehicle and discovered methamphetamine. Selph was arrested and charged with possession of methamphetamine.

After the evidence was concluded, the trial court heard arguments from Selph's counsel and the prosecutor. Following the arguments, the trial court granted Selph's motion to suppress. The trial court entered findings of fact and

3

conclusions of law. Both the State and Selph adopted the findings of fact filed by the trial court. In its conclusions of law, the trial court concluded, among other things, that a driver has indicated an intention to change lanes when he activates his turn signal in the middle of the process of changing lanes.

## II. Standard of Review

We evaluate a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In our review of a trial court's ruling on a motion to suppress, we afford almost total deference to the trial court's determinations of historical facts that are supported by the record, especially when those determinations are based on an evaluation of credibility and demeanor. *State v. Elias*, 339 S.W.3d 667, 673 (Tex. Crim. App. 2011). We review de novo the trial court's application of law to facts not turning on credibility and demeanor. *Ford*, 158 S.W.3d at 493. "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)).

4

We will sustain a trial court's ruling if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (en banc). In this case, neither party challenges the trial court's findings of fact; therefore, the issues presented are questions of law of which we review de novo. *See Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).

### III. Discussion

In his motion to suppress, Selph argued that his arrest violated the United States and Texas Constitutions because he was arrested without a warrant or probable cause. He argued the traffic stop was "without reasonable suspicion supported by articulable facts that criminal activity may be afoot or a traffic violation occurred."[1] The State contends that the trial court erred in granting Selph's motion to suppress because Officer Early had reasonable suspicion to initiate a traffic stop for three reasons: (1) Early had an anonymous tip that was sufficiently corroborated, (2) Early observed that Selph's vehicle had an illegible

---

[1] We note that Selph claims his rights under article I, section 9 of the Texas Constitution and article 38.23 of the Texas Code of Criminal Procedure were violated. However, because Selph does not provide separate authority or argument for these claims, we decline to address them. *See* Tex. R. App. P. 38.1; *Balentine v. State*, 71 S.W.3d 763, 766 n.2 (Tex. Crim. App. 2002) (citing *Heitman v. State*, 815 S.W.2d 681, 690-91 n.23 (Tex. Crim. App. 1991)).

temporary tag, and (3) Early observed that Selph failed to timely signal a lane change.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. When a defendant seeks to suppress evidence because of an alleged violation of the Fourth Amendment, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005) (en banc); *Ford*, 158 S.W.3d at 492. A defendant meets this burden by establishing that a search or seizure occurred without a warrant. *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492. Once the defendant has established that a warrantless search occurred, the burden of proof shifts to the State to prove the search was conducted reasonably. *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492.

An officer's decision to stop a vehicle is reasonable when an officer has probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). A traffic violation committed in an officer's presence provides probable cause and authorizes an initial stop and detention. *See* Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2005) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.");

6

*Arizona v. Johnson*, 555 U.S. 323, 331 (2009); *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (running a stop sign); *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982) (driving with a defective taillight).

The Texas Transportation Code provides that "[a]n operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position."[2] Tex. Transp. Code Ann. § 545.104(a) (West 2011). Selph contends that he signaled his intention to change lanes within the

_____

[2] Section 545.106 of the Texas Transportation Code provides:

(a) Except as provided by Subsection (b), an operator required to give a stop or turn signal shall do so by:

> (1) using the hand and arm; or

> (2) lighting signal lamps approved by the department.

(b) A motor vehicle in use on a highway shall be equipped with signal lamps, and the required signal shall be given by lighting the lamps, if:

> (1) the distance from the center of the top of the steering post to the left outside limit of the body, cab, or load of the motor vehicle is more than two feet; or

> (2) the distance from the center of the top of the steering post to the rear limit of the body or load, including the body or load of a combination of vehicles, is more than 14 feet.

Tex. Transp. Code Ann. § 545.106 (West 2011).

requirements of the law. The trial court made the following relevant findings of fact:

> 12. [Early] followed the white Chevrolet Tahoe from behind and watched it start to change lanes. The white Chevrolet Tahoe crossed half of the vehicle over the white dashed lane marking down the middle of the two westbound lanes starting from the officer's right and moving to the officer's left. Once the white Chevrolet Tahoe had already completed half of the lane change, [Early] saw the illuminated turn signal on the white Chevrolet Tahoe activate.

> 20. The Court finds the testimony of [Early] credible and reliable.

While Selph does not contest these findings, he argues that "[t]here is no requirement under the law of when the signal to change lanes must be started." He argues "[t]he only requirement is the 'operator shall use the signal[.]" We disagree.

When we construe a statute, we read words and phrases in context and construe them according to the rules of grammar and common usage. Tex. Gov't Code Ann. § 311.011(a) (West 2013). We give words that are not defined their plain and common meaning unless a contrary intention is apparent from the context or unless such construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008).

The plain language of section 545.104(a) requires an operator to signal "an *intention* to . . . change lanes[.] Tex. Transp. Code Ann. § 545.104(a) (emphasis added). Chapter 541 of the Transportation Code does not define "intention." *See id.*

8

§§ 541.001-.401 (West 2011 & West Supp. 2014). The word "intention" generally means "[a] plan of action[,]" or "[a]n aim that guides action[.]" AMERICAN HERITAGE DICTIONARY 436 (3d. ed. 1994). "Intention" is also defined as "a determination to act in a certain way" or "what one intends to do or bring about[.]" WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 629 (1988). Therefore, it is clear that for one to signal an intention to change lanes, one must give the signal before movement into the other lane is initiated. Once a person begins to change lanes, their intention is clear even without a signal.

The purpose behind requiring an operator to signal his intent to change lanes is to alert other drivers and give them an opportunity to react. *See Coleman v. State*, 188 S.W.3d 708, 716 (Tex. App.—Tyler 2005, pet. ref'd). Activating a signal after the vehicle has already entered the adjacent lane, even partially, does not accomplish that purpose.

We conclude that section 545.104(a) of the Transportation Code required Selph to signal his lane change before he began to change lanes. *See id.* at 716-17 (concluding appellant committed a traffic violation when he did not activate his signal to indicate he was changing lanes until after he was across the center stripe). Office Early witnessed a violation of a traffic law. Accordingly, Officer Early's stop was proper. Because Early's observation of a traffic violation justified the

stop, we need not address whether the stop was also justified by the anonymous tip or the illegible temporary license plate. *See* Tex. R. App. P. 47.1. The trial court erred in its application of law to facts and in granting Selph's motion to suppress. We sustain the State's sole issue on appeal, reverse the trial court's order, and remand this case for further proceedings.

REVERSED AND REMANDED.

_____
CHARLES KREGER
Justice

Submitted on September 15, 2014
Opinion Delivered December 17, 2014
Do not publish

Before McKeithen, C.J., Kreger, and Horton, JJ.

10